```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 11, 2010
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
AMERICAN STEAMSHIP OWNERS MUTUAL    :
PROTECTION AND INDEMNITY                        :
ASSOCIATION, INC.,                                           :
                                                                             :
                      Plaintiffs,                          :          07 Civ. 9353   (PAC)
                                                                             :
       - against -                                        :          ORDER
                                                                             :
CLEOPATRA NAVIGATION CO. LTD., and     :
SPHINX SHIPPING AGENCY,                           :
                                                                             :
                                                                             :
                      Defendants.                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff American Steamship Owners Mutual Protection and Indemnity Association, Inc. (the "Club") brings this breach of contract action to recover unpaid amounts of money arising under a marine insurance policy (the "Policy") that it issued to Defendants Cleopatra Navigation Co. Ltd. ("Cleopatra") and Sphinx Shipping Agency ("Sphinx," together with "Cleopatra," the "Defendants"). The Policy covered the vessel M/V CLEOPATRA I (the "Vessel") from July 4, 2004 through June 29, 2005.

In connection with its breach of contract claim, the Club also sought a maritime attachment order to obtain pre-judgment security. On October 19, 2007, pursuant to Rule B of the Supplemental Admiralty Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, the Court issued an Ex Parte Order for Maritime Attachment and Garnishment (the "Attachment Order") authorizing the Club to attach property of the Defendants, including electronic fund transfers ("EFTs") passing through the Southern District of New York. (Dkt. #3.)  On October 16, 2009, however, the Second Circuit issued its decision <u>Shipping Corp. of India v. Jaldhi Overseas PTE Ltd.</u>, 2009 U.S. App. LEXIS 22747 (2d Cir. Oct. 16, 2009), holding that EFTs processed by an intermediary

1

bank are not subject to Rule B attachment. Jaldhi prompted the Court to issue an order to show cause, dated October 29, 2009 (the "Order to Show Cause"), why the Court should not vacate the Attachment Order.

Before the Court are: (i) the Club's motion for summary judgment against the Defendants; (ii) Sphinx's motion for summary judgment against the Club; and (iii) the parties' responses to the Order to Show Cause.

For the reasons that follow, the Club's motion for summary judgment is GRANTED as against Cleopatra but DENIED as against Sphinx. Sphinx's motion for summary judgment is DENIED. The Court VACATES the Attachment Order.

**The Summary Judgment Motions**

The Court grants Club's summary judgment motion against Cleopatra. There is no dispute that: (a) Cleopatra entered into the Policy with Club; (b) Cleopatra failed to pay the Club $116,143.69 due under the Policy from July 4, 2004 through June 29, 2005; and (c) the Club satisfied its obligations under the Policy. In fact, Cleopatra has not appeared in this action. Accordingly, the Court grants the Club's summary judgment motion as against Cleopatra.

The Court, however, denies the Club's summary judgment motion as against Sphinx for the same reason it denies Sphinx's summary judgment motion against the Club: genuine issues of material fact preclude summary judgment on the issue of Sphnix's liability.

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" for summary judgment purposes if it "'might affect the outcome of the suit under the governing law.'" Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 45 (2d Cir. 2002). A "genuine" issue as to a material fact exists if "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." Id.. When determining whether the movant met its burden "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once the moving party has met its burden the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Here, it is unclear whether Sphinx is a party to the Policy. The Club advances two theories for Sphinx's liability: that Sphinx is Cleopatra's manager and, as such, was liable to the Club as a co-assured under the Policy, or, alternatively, that Sphinx is Cleopatra's alter-ego, asking the Court to pierce Cleopatra's corporate veil. (See Dkt. #19.)

Genuine issues of material fact, however, preclude summary judgment on both of these theories. The parties dispute whether the Club ever had direct dealings with Sphinx and whether Sphinx is Cleopatra's agent or manager. The Club's witness, Ian Farr ("Farr"), testified that he never had any direct dealings with Sphinx (Ex. F to Rule 56.1(a) Declaration of Edward A. Keane ("Keane Dec."), at 10.) And if Sphinx is Cleopatra's agent, then it did not have an insurable interest in the Vessel and did not require marine insurance. Finally, the parties dispute whether Sphinx requested the Club's insurance coverage or understood that it was a co-assured under the Policy. (Id., at 24-25; Ex. T to Keane Dec., at 45-70.)

The Club points principally to two documents as evidence that Sphinx was liable under the Policy: (i) the Club's Certificate of Entry dated July 5, 2004 (Ex. C to Keane Dec.) (the "C.O.E."), which, directly underneath Cleopatra, lists Sphinx as a manager of the Vessel in the box labeled "Member"; and (ii) a letter purportedly from Cleopatra dated July 5, 2004 and identifying Sphinx as the Vessel's manager (the "July 5 Letter ") (Ex. V to Keane Dec.)

Neither of these documents, however, dispels every genuine issue of material fact. The C.O.E. is ambiguous; it does not refer to Sphinx as a co-assured. Sphinx's name appears on the C.O.E., but it

is unclear whether Sphinx is listed as a named insured. The name "Sphinx" appears in a font considerably smaller than the name "Cleopatra," and immediately next to Sphinx's name is the caption "(Manager)." Furthermore, though the C.O.E. lists Sphinx as the Vessel's "manager," other documents indicate that Sphinx was not the Vessel's manager (Ex. D to Keane Dec.), and Farr could not explain the contradiction between the documents (Ex. F to Keane Dec., at 65.)

Nor is the July 5 Letter dispositive. The July 5 Letter identifies Sphinx as the Vessel's manager but Sphinx disputes its authenticity, pointing to anomalies in form. Unlike other Sphinx documentation, the July 5 Letter: refers to the Vessel as "Cleopatra" (whereas other Sphinx documentation refers to the Vessel as "Cleopatra I"); is written in both English and Arabic (whereas other Sphinx documentation is written in only one language); and sports a large banner with the name "CLEOPATRA NAVIGATION LTD" in block letters (whereas other Sphinx documentation lack this large banner).

Since evidence of Sphinx's intent to contractually bind itself to the Club is conflictual and ambiguous, it gives rise to a choice among reasonable inferences as to whether Sphinx intended to be bound under the Policy and precludes judgment as a matter of law. See e.g., Uniroyal, Inc. v. Home Ins. Co., 707 F. Supp. 1368, 1374-75 (E.D.N.Y. 1988) ("[i]f the extrinsic evidence presents issues of credibility or a choice among reasonable inferences, the decision on the intent of the parties is a job for the trier of fact.").

Nor can the Club prevail as a matter of law under its alter-ego theory, which would require the Court to pierce Cleopatra's corporate veil to reach Sphinx. It is undisputed that New York law applies. Veil-piercing under an alter-ego theory may be appropriate under New York law "when a parent so dominates and disregards a subsidiary's corporate form that the subsidiary primarily transacts the parent's business rather than its own business." In re M/V Rickmers Genoa Litig., 622 F. Supp. 2d 56, 75 (S.D.N.Y. 2009). As a general matter, "[c]ourts are reluctant to pierce a corporate veil but may do

so when presented with a particularly egregious case of domination and control." Id.  Relevant factors for the Court to consider include:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity; and (10) intermingling of property between the entities.

Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd., 475 F. Supp. 2d 275, 284 (S.D.N.Y. 2006).

Here, the Club has produced evidence indicating that Sphinx and Cleopatra share offices and telephone numbers, have the same managing director, are partially owned by the same person (Samy Mohamed Abdella), and that Sphinx has been involved in communications with the Club regarding the Policy.  On the other hand, however, Sphinx contends that veil-piercing is inappropriate at this time because there is no evidence that Sphinx made any premium payments on behalf of Cleopatra (Ex. F to Keane Dec., at 95) and because Sphinx has filed a cross-claim against Cleopatra in this action (Dkt. # 20 at 8-9).  The totality of this evidence does not demonstrate that Sphinx egregiously dominated and controlled Cleopatra, precluding judgment as a matter of law regarding the Club's alter-ego claim.

**The Attachment Order**

The Court vacates the Attachment Order. In Jahldi, 585 F.3d at 71, the Second Circuit held that EFTs processed by an intermediary bank in New York, as here, are not subject to Rule B attachment. Subsequently, the Second Circuit held in Hawknet, Ltd. v. Overseas Shipping Agencies, 590 F.3d 87, 92 (2d Cir. 2009), that "the rule announced in [Jahldi] has retroactive effect to all cases open on direct review." The Club argues that the Attachment Order is not subject to Jahldi because the intermediary bank here, Bank of New York Mellon, has held the EFTs for two years, altering the Club's proprietary interest in the EFTs. But time alone does not alter the character of a proprietary interest and courts have properly rejected this argument. See e.g., Setaf-Segat v. Cameroon Shipping Lines S.A., No. 09 Civ. 6714 (JGK), 2009 WL 4106502, at *1 (S.D.N.Y. Nov. 16, 2009) ("No alchemy by the bank transformed ETFs that cannot be attached into property of the defendant that can be attached."). Accordingly, the Court vacates the Attachment Order.

## Conclusion

The Club's motion for summary judgment is GRANTED as against Cleopatra, but DENIED as against Sphinx. Sphinx's motion for summary judgment is DENIED. The Court VACATES the Attachment Order. The parties are directed to appear before the Court for a status conference on Monday April 12, 2010 at 4:30 P.M. The Clerk of the Court is directed to close out all motions pending in this case (Dkt. #s 25 and 28).

Dated: New York, New York
      March _11_, 2010

SO ORDERED

_/s/ Paul A. Crotty_
PAUL A. CROTTY
United States District Judge

6